UNITED STATES v. OLDS MOTOR WORKS.
No. 20376.

District Court, E. D. Michigan, N. D.
June 19, 1933.

Gregory H. Frederick, U. S. Atty., David A. Wolff, Asst. U. S. Atty., both of Detroit, Mich., Burt L. Smelker, Sp. Asst. U. S. Atty., and Daniel H. Kunkel, Atty., Interstate Commerce Commission, both of Washington, D. C.

Zane, Morse & Norman, of Chicago, Ill., and Royal T. McKenna, of Washington, D. C., for defendant.

TUTTLE, District Judge.

This is a criminal prosecution against the defendant Olds Motor Works, a Michigan corporation, on an indictment charging it with having knowingly accepted certain unlawful concessions from the New York Central Railroad Company and from the Grand Trunk Western Railroad Company in respect to the transportation, by those carriers, for the defendant, of various automobiles in interstate commerce, whereby such automobiles were transported at a rate less than the lawful rate, in violation of the Elkins Act, § 1, as amended (section 41, title 49, United States Code [49 USCA § 41]). After a trial before a jury, the defendant was convicted. Thereafter it filed a motion for a new trial, based on alleged error committed by the court in its instructions to the jury, which motion is now before the court for decision.

After careful examination and consideration of the entire record, including a transcript of all of the testimony, and of the able and exhaustive briefs submitted by counsel for the parties, I have reached the conclusion that error was committed in the instructions to the jury and that the judgment of conviction should be set aside.

The indictment alleges, in substance, that on various specified dates the defendant ordered from the said carriers certain cars having a length of 40 feet 6 inches, for transportation, in carload lots, of the said automobiles from Lansing, Mich., to New York; that such carriers furnished such cars and transported such automobiles accordingly; that the minimum carload weight, on which the lawful tariff rate per 100 pounds on such carload shipments was required to be based, was 11,200 pounds; that the aggregate weight of each of such carload shipments was 9,150

pounds, and therefore the aforesaid minimum weight was applicable thereto; that the defendant, although it paid the proper freight rate of 100 pounds, computed the freight charges so paid upon a minimum carload weight of 10,000 pounds, instead of upon the applicable minimum weight of 11,200 pounds, and thereby accepted a concession in respect to such transportation, "contrary to the form of the statute in such case made and provided."

The material facts, as disclosed by the undisputed evidence, may be stated, sufficiently for the purposes of this opinion as follows:

The defendant shipped the afore-mentioned automobiles, in interstate commerce, from its factory at Lansing, Mich., in carload shipments, some over the New York Central Railroad, and some over the Grand Trunk Western Railroad, on various dates, in cars having a length of 40 feet, 6 inches, which were furnished to it by those carriers, respectively. The lawful published tariffs governing these carload shipments provided for a certain rate per 100 pounds, depending on the point of destination, but also provided that such rate should be computed on a specified minimum carload weight, which minimum weight, in the case of a 40-foot 6-inch car, was 11,200 pounds per car and, in the case of a 36-foot 6-inch car, was 10,000 pounds per car. Those rates and charges, however, were subject to the following provisions of section 2 of Rule 34 of Consolidated Freight Classification No. 5, constituting official classification No. 49, governing interstate carrier railroads, including the carriers here involved:

"When a shipper orders a car 36 feet 6 inches or less in length for articles subject to Rule 34, and the carrier is unable to furnish car of desired length when ordered, a longer car will be furnished under the following conditions: (a) If the carrier is unable to furnish car of desired length and furnishes a longer car not exceeding 40 feet 6 inches in length, the minimum weight for the car furnished shall be that fixed for the car ordered, except that when the loading capacity of the car is used the minimum weight shall be that fixed for the car furnished. * * * If a longer car than ordered is furnished, the following notation must be made by Agent on Bill of Lading and Way-bill: 'Car ——— ft. in length ordered by shipper on ——— (date); car ——— ft. in length furnished by carrier on ——— (date), under Rule 34 of the Consolidated Classification.' "

The loading capacity of 36-foot 6-inch cars was three automobiles per car and that of 40-foot 6-inch cars was four automobiles per car. The defendant, desiring to use only the loading capacity of 36-foot 6-inch cars, from time to time gave to the said carriers written orders for such cars. These carriers, however, neither owned nor had in their possession any cars of that length, as the defendant knew when it ordered them, and the only cars which they had, suitable for the purpose of the defendant, were the 40-foot 6-inch cars already mentioned, which fact also was known to the defendant. After the filing of these written orders with the said carriers by the defendant, through its shipping department, the switching crews of the carriers furnished to the defendant, as the defendant expected and consented that they should, 40-foot 6-inch cars instead of the shorter cars so ordered, which longer cars were accepted and used by the defendant, but were loaded with only three automobiles per car instead of the four automobiles which could have been loaded into them. These substituted cars were so furnished as and when verbally called for by the yard employees of the defendant, who, as and when cars were needed for immediate loading, asked the yard employees of the carriers to deliver such cars at designated points, knowing that only 40-foot 6-inch cars could and would be furnished for such loading. When so loaded, these carload shipments were transported by these carriers, as consigned by the defendant, under bills of lading containing the notation required by the language of Rule 34 already quoted. The weight of each such shipment was less than 10,000 pounds, and freight charges therefor were paid by the defendant on the basis of a minimum carload weight of 10,000 pounds, which the defendant claimed, and now claims, was the proper basis for payment of such charges, under the provisions of the said Rule 34.

The ultimate question here involved is whether the transportation charges for these shipments should have been computed on the basis of a minimum carload weight of 10,000 pounds, as was done by the defendant in reliance on Rule 34, or upon a minimum carload weight of 11,200 pounds, as the government claims should have been done. The answer to this question depends entirely upon the correct interpretation of the rule just mentioned. The fundamental question involved is whether this rule, properly construed, was such that, under the circumstances here shown, the defendant, desiring to ob-

tain the cheaper tariff freight rate fixed for a minimum load on the 36-foot 6-inch cars, could obtain such cheaper rate by filing with the railroad company written orders for such 36-foot 6-inch cars, which it knew that the railroad could not supply, accept the 40-foot 6-inch cars which it knew were available and would be furnished, load and ship the three-automobile carload shipments in the 40-foot 6-inch cars, and be entitled to the minimum rate provided for the shorter cars, 36 feet 6 inches in length. If a proper interpretation of this tariff rule permits the doing of that thing, then the defendant is not guilty. The written orders for the 36-foot 6-inch cars were actually filed by the defendant company with the carriers. They were filed in bunches and in large numbers, and for a greater number of cars than were actually needed and used. If this tariff rule, correctly construed, permitted this, then no criticism attaches to the manner in which these orders were given. If, under the circumstances stated, the defendant company was entitled to the minimum rate for 36-foot 6-inch cars if they ordered cars of that dimension where larger cars were furnished, and the load of the larger car did not exceed the capacity of the smaller car, then no complaint can be made simply because the defendant company and the railroad company handled the matter of securing for the defendant what it was entitled to receive in a simple manner. The fact that subordinate employees of the defendant company told the train crews of the railroad company when and where to place cars on the siding for immediate loading, and in so doing referred to the 40-foot 6-inch cars which were the only ones available, would have no bearing on the question. It would not indicate any bad faith or constitute an order by the defendant company for the larger cars if a proper interpretation of the tariff rule permitted the use of the larger cars at the lower freight rate, under these circumstances.

This court, in submitting the matter to the jury, did not interpret this rule in the manner just indicated. The court was then of the opinion that a proper interpretation of the rule was such that, if the defendant company knew that the railroad company had no cars 36 feet 6 inches in length, that none could be supplied by it to the defendant, and that the only cars which could be supplied by the railroad company were cars 40 feet 6 inches in length, then there was no way under the rule by which the defendant company could lawfully secure the lesser minimum rate; that, under these circumstances and with this knowledge, it was the duty of the defendant company to place its orders for the only cars which, as it knew, were available; and that, if the defendant company placed orders for the shorter cars which it knew could not be supplied, knowing that the longer cars would be supplied under that order, then in reality it was actually ordering the longer cars. The question as to whether or not this was a proper instruction to the jury depends upon the question as to what is a correct interpretation of the tariff rule here involved. If the intent of that rule is not to permit a shipper to get the lower rate under these circumstances, then, of course, no scheme could be devised to avoid such rule. On the other hand, if a proper interpretation of the rule permits a shipper with the smaller load, but knowing that the railroad cannot furnish the smaller car, to file a written order for the smaller car, and, when the larger car is furnished, load it with the smaller load and pay only the smaller freight rate, then no just criticism can be made of the defendant for availing itself of such rule and thus avoiding the greater expense.

As stated, there is no dispute as to the facts. The defendant wanted to ship three automobiles in a car because it believed under the rule it would be cheaper. Three automobiles would go into a freight car 36 feet 6 inches long. The defendant ordered a car 36 feet 6 inches long, knowing that it could not be furnished, knowing that a car 40 feet 6 inches in length would be furnished, and for the express purpose of securing the lower minimum freight rate. A car 40 feet 6 inches long was actually furnished to it, and it put three automobiles in such car. The defendant paid the minimum rate for a car 36 feet 6 inches long. The filing of the written order and the other things which it did were for the express purpose of getting the lower rate. If this rule permitted this lower rate under these circumstances, then the defendant is not guilty of any offense. The defendant has done all that it could do to secure the lower freight rate; the defendant has paid the lower freight rate. If, under a proper interpretation of the rule, defendant can, by the filing of an order for the smaller car which cannot be furnished and by placing in the larger car which is furnished a load which would go into the smaller car, secure the benefit of the rate on the smaller car, even though the defendant knows when the order is filed that the smaller car cannot be furnished, then the defendant was within its rights and a verdict of not guilty should have been directed.

I am of the opinion that defendant is correct in its interpretation of the rule. The interpretation placed on this rule by the defendant is not an unreasonable one. These tariffs, when promulgated by the railroad company and approved by the Interstate Commerce Commission, should have in mind the rights and interests of the shipper. What is the position of a shipper? Whether he be engaged in farming or manufacturing, he may wish to ship a load of a given weight or a given dimension. He, of course, wishes to avail himself of the cheapest possible rate, which usually means a car as small as possible which will carry the load which he wishes to ship. I know of no reason why a proper tariff could not be made and approved by the Commission, if it were thought advisable, which would take care of such a shipper and permit him to order a car which would fit his load and get the lower rate, even though he had actual knowledge that there was no such car on the railroad and no such car was available, or even though no such car of that dimension had ever been made in the United States. It might be thought by the Commission to be desirable to bring to the attention of the railroad in that manner the demand for cars of that particular dimension in order that cars of the size needed might be made available and in order that shippers might avoid the necessity of incurring unnecessary expense in being forced to use cars which were larger than they needed. The Commission might well decide that, if demand for the cars of the smaller dimension were not sufficient to warrant the building of cars of that size, then the railroads should be required to furnish the larger cars at the rate of the smaller cars and thus give the shipper the advantage of a rate which fitted the load to be shipped. It seems to me that there are such considerations and reasons which can be urged for such a rule that it cannot be said that a rule which makes such a plain provision is so unreasonable that a court should search for some other interpretation. This rule plainly states that, if the smaller car is ordered by the shipper and cannot be supplied by the railroad company, and a larger car is furnished to the shipper and not loaded to its capacity by the shipper, then the minimum rate for the smaller car is to be charged. No other conditions are provided. If the Interstate Commerce Commission had wished to impose other conditions, it would have been easy to add them. It could have been provided that the lower rate should apply only in the event that the railroad usually had available cars of the dimensions ordered; it could have been stated that the rule should apply only in the event that the shipper believed that the car ordered was available and could be furnished; but no such conditions were added.

After careful consideration, I reach the conclusion that the intent of this rule, when so promulgated and approved, was to give to the shipper who had a minimum load which would fit into a 36-foot 6-inch car the absolute right to make his shipment at the minimum rate fixed for a 36-foot 6-inch car, provided he ordered a 36-foot 6-inch car, entirely independent of the question whether the shipper had knowledge that the railroad could not furnish the car so ordered. The rule plainly provides that, if the shipper does order the smaller car and the railroad company cannot furnish it, but furnishes a 40-foot 6-inch car in place of the smaller car, and the shipper places in such longer car a load less than its total loading capacity, the correct rate is the rate for the smaller car. That being my interpretation of the rule and the defendant in this case having complied with the rule as so construed, defendant was entitled to a directed verdict of not guilty.

The clerk will therefore enter an order setting aside the verdict of guilty and granting a new trial.